UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br><br>JOSE VALENTIN MORA,<br><br>　　　　　　　　　　Defendant. | Case Nos. 3:18-cr-00055-MMD-WGC<br>　　　　　　　 3:18-cr-00057-MMD-WGC<br><br>ORDER |

**I.　SUMMARY**

Defendant Jose Valentin Mora is concurrently serving a 168-month sentence for conspiracy to distribute methamphetamine (Case No. 3:18-cr-00057 ("Case No. 57")) and a 60-month sentence for possession of a firearm by a prohibited person (Case No. 3:18-cr-00055 ("Case No. 55")). (Case No. 57, ECF No. 713; Case No. 55, ECF No. 121.) He is also sentenced to concurrent five years of supervised release in Case No. 57 and three years of supervised release in Case No. 55. (*Id.*) Before the Court are Defendant's motions[1] for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). (Case No. 57, ECF No. 916; Case No. 55, ECF No. 125 (jointly, "Motion").) Mora argues that there are "extraordinary and compelling" reasons for reduction in his sentence because of unfair discrepancies in methamphetamine sentencing guidelines, the ongoing COVID-19 pandemic, and the government's failure to honor his plea agreement. (Case No. 57, ECF No. 916 at 1-2; Case No. 55, ECF No. 125 at 1-2.) Because Mora has not presented

---

[1]Defendant submits the same motion in Case No. 57 and Case No. 55, and the responses are the same across both cases. The Court thus issues this combined Order. The government opposes Mora's release. (Case No. 57, ECF No. 922; Case No. 55, ECF No. 127 (jointly, "Response").) Defendant did not file a reply, and the deadline to do so has passed. For purposes of this Order, where the parties' arguments and filings are common between cases, the Court will cite to the docket in Case No. 57.

extraordinary and compelling reasons within the meaning of the statute, and as further explained below, the Court will deny Mora's motion as to each case.[2]

## II. BACKGROUND

On October 18, 2019, Defendant pled guilty to one count of conspiracy to possess methamphetamine with intent to distribute at least 50 grams of actual methamphetamine and 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846. (Case No. 57, ECF Nos. 590, 601.) He admitted that he engaged in arrangements on numerous occasions in 2018 to sell large quantities of methamphetamine to co-conspirators. (Case No. 57, ECF No. 601 at 8-38.) Under a combined plea agreement, Mora pled guilty on the same day to one count of possession of a firearm by a prohibited person in violation of 21 U.S.C. §§ 922(g)(1) and 924(d). (Case No. 55, ECF Nos. 108, 109 at 38-40.) He admitted that he knowingly possessed a Bersa Thunder .380 caliber pistol, while he also knew that he was a previously-convicted felon. (Case No. 55, ECF No. 109 at 38-40.)

On February 10, 2020, the Court sentenced Mora to 168 months in prison and five years of supervised release for the methamphetamine charge and 60 months in prison and three years of supervised release for the firearm charge. (Case No. 57, ECF Nos. 710, 713; Case No. 55, ECF Nos. 120, 121.) The Court ordered the sentences to run concurrently. (*Id.*) At the time of this Order, Defendant has served approximately 64 months out of his 168-month total sentence. (Case No. 57, ECF No. 922 at 1-2.) On May 5, 2023, Defendant filed this *pro se* Motion seeking a reduction in his sentence to time served or, alternatively, to "around half of the total of his aggregate 168 month sentence." (ECF No. 916 at 18.)

///

---

[2] Defendant also "[prays] that this Court will appoint him a lawyer" in moving for relief because he is a prisoner ill-versed in the law. (ECF No. 916 at 18.) Under the Court's General Order 2020-06, the Federal Public Defender for the District of Nevada reviewed Mora's Motion and filed a notice of non-supplementation because "it does not believe that any supplement is necessary." (ECF No. 919.)

2

## III. DISCUSSION

Defendant seeks release under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act ("FSA") of 2018. (Case No. 57, ECF No. 916.) This provision offers Defendant a limited exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it. *See* 18 U.S.C. § 3582(c); *see also U.S. v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (explaining that generally a court cannot modify a sentence after it has imposed it). "It allows the sentencing judge to reduce a sentence based on 'extraordinary and compelling reasons' after the defendant has asked the [Bureau of Prison ("BOP")] to bring such a motion on her behalf and exhausted all administrative rights to appeal the BOP's denial of that request." *United States v. Mogavero*, Case No. 2:15-cr-74-JAD-NJK, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

The Court follows a three-step process to evaluate the Motion. First, the Court determines if Mora has satisfied the statutory prerequisites under Section 3582(c)(1)(A). Then, the Court evaluates whether Mora has shown "extraordinary and compelling reasons" for the Court to release him under Section 3582(c)(1)(A)(i). Finally, the Court addresses the applicable policy statements and sentencing factors under Section 3582(c)(1)(A). The Court "must consider the factors in 18 U.S.C. § 3553(a) 'to the extent that they are applicable,' and any sentence reduction must be 'consistent with applicable policy statements issued by the Sentencing Commission.'" 18 U.S.C. § 3582(c)(1)(A)(i). Here, there is no dispute regarding the first step. The Court will primarily address the second step, while also considering applicable policy statements, because the Court does not find extraordinary and compelling reasons exist that weigh in favor of granting Mora's Motion.

### A. Statutory Prerequisites

Section 3582(c)(1)(A) requires that a defendant ask the BOP to bring a motion for compassionate release on the defendant's behalf before filing such a motion with the court, normally done by submitting a request to the warden. *See also* 18 U.S.C. §

3

3582(c)(1)(A). In addition, a defendant may only bring a motion under Section 3582(c)(1)(A) "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.*

On February 22, 2023, Defendant submitted a request for compassionate release to the warden of the United States Penitentiary, Canaan ("USP Canaan") and more than 30 days had passed at the time the Motion was filed. (ECF No. 922 at 6.) "The government agrees that the defendant has exhausted his administrative remedies" (*Id.*) The Court thus proceeds to the other two steps of the analysis.

### B.   Extraordinary and Compelling Reasons

Mora argues that there are three extraordinary and compelling reasons for a reduction in his sentence: (1) his sentencing guideline calculation was inaccurate as to his methamphetamine charge and resulted in an artificially long sentence; (2) the COVID-19 pandemic has made prison conditions especially harsh; and (3) the government did not honor the terms of his plea agreement. (ECF No. 916 at 1-2.) The Court addresses each argument.

#### 1.   Sentencing guideline calculation

As "the primary basis for his compassionate release motion," Mora argues that the sentencing guidelines applied to his methamphetamine charge (Case No. 57) were inaccurate because they reflect a faulty distinction between pure methamphetamine and methamphetamine mixture in assessing culpability. (ECF No. 916 at 5, 11-13.) *See also* U.S.S.G. §2D1.1(c). Mora argues that "[b]ecause he pled guilty to and the case involved a little over 5 kilograms of especially pure meth, the Guidelines indicated his base offense level to be 38" while "the same amount of meth mixture would have given him a base offense level of somewhere around 34." (ECF No. 916 at 11.) This "resulted in Mora receiving additional months if not likely years in prison." (*Id.*) Moreover, Mora argues that he would receive a shorter sentence today, if he were sentenced under more lenient

methamphetamine guidelines. (*Id.*) The government responds that the Court applied the correct guideline calculation at Mora's sentencing, given that he admitted to a conspiracy involving more than five kilograms of pure methamphetamine in his plea agreement, and that the guideline for that quantity remains the same today. (ECF Nos. 601, 922 at 7-8.)

The Court agrees with the government that the correct base offense level was applied at Mora's sentencing under Section 2D1.1(c) of the guidelines, which sets a base level of 38 for 4.5 kilograms or more of "actual" methamphetamine.[3] Mora explicitly stipulated to a base offense level of 38 in his plea agreement. (ECF No. 601 at 41.) The Court recognizes developing case law suggesting that the methamphetamine guidelines' distinction between pure methamphetamine and methamphetamine mixture may be a relevant factor in assessing a downward variance at sentencing.[4] *See, e.g.*, *United States v. Hayes*, 948 F. Supp. 2d 1009, 1027 (N.D. Iowa 2013) (citing *United States v. Woody*, 8:09-cr-382, 2010 WL 2884918, at *10 (D. Neb. July 20, 2010). Here, however, the Court already granted a downward variance at Mora's sentencing—his guideline sentence range was 360-months-to-life imprisonment, and he received a sentence of 168 months. (ECF No. 601 at 8.) There is no evidence that Mora would have received a substantially different sentence today under unchanged guidelines.

The Court also agrees with the government that, to the extent a defendant's primary argument is that the applicable law has evolved, other channels of relief are

---

[3]The Sentencing Commission promulgated amendments to current sentencing guidelines on April 27, 2023. *See* U.S.S.C., Amendments to the Sentencing Guidelines, Apr. 27, 2023. These amendments will become effective on November 1, 2023, absent action by Congress to the contrary. *See id.* The amended guidelines do not alter the base offense level of 38 applied to 4.5 grams or more of actual methamphetamine, although they make changes regarding applicable reductions and enhancements. *See* U.S.S.G. § 2D1.1(c), as amended.

[4]The non-binding comments to the Sentencing Commission's 2023 promulgated amendments, however, emphasize that the Commission does not view a change in law as an independent extraordinary and compelling circumstance. *See* U.S.S.G. §1B1.13 cmt. (c), as amended (providing that a change in the law "shall not be considered for determining whether an extraordinary or compelling reason exists . . . However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction" then "a change in the law . . . may be considered for purposes of determining the extent of any such reduction").

available. (ECF No. 922 at 7-8.) *See* 18 U.S.C. § 3582(c)(2) (providing that a defendant may pursue sentence modification, separate from a request from compassionate release under Section 3582(c)(1)(A), where the Sentencing Commission has subsequently lowered an applicable sentencing range). The Court accordingly finds that Mora's methamphetamine guideline calculation does not present any compelling or extraordinary reasons for sentence reduction.

### 2. COVID-19 conditions

Mora further argues that the COVID-19 pandemic has made prison confinement unusually harsh and punitive—itself an extraordinary and compelling circumstance. (ECF No. 916 at 13-14.) To prevail on the "extraordinary and compelling reasons" prong of the analysis based on COVID-19 conditions, a defendant generally must demonstrate personal health risk factors combined with public health circumstances that present particular risk. Mora must establish: (1) the combination of his age and underlying health conditions elevates his risk of becoming seriously ill were he to contract COVID-19 (the "Underlying Health Conditions Prong"); and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released (the "Location Prong"). *See, e.g.*, *U.S. v. Kauwe,* 467 F. Supp. 3d 940, 942-43 (D. Nev. June 3, 2020).[5]

Here, Mora has not presented any facts suggesting (1) that he suffers from any medical conditions that increase his risk of complications or death from COVID, or (2) that there is a current public health crisis at his facility. Mora focuses on COVID-19's past impact on prison operations, including by increasing lockdowns and reducing visitation and other important prisoner activities. (ECF No. 916 at 13-14.) These concerns, while meaningful, are common to many prisoners in the BOP system and do not justify early

---

[5]The Sentencing Commission's 2023 promulgated and adopted amendments include new comments suggesting that an extraordinary and compelling reason for early release exists where the defendant "is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority" and "due to personal health risk factors and custodial status" that defendant is at increased risk of severe medical complications or death," and "such risk cannot be adequately mitigated in a timely manner." U.S.S.G. §1B1.13 cmt. (b)(1)(D)(i)-(iii), as amended.

release in Mora's particular case. The Court further agrees with the government that, even if Mora could present an extraordinary and compelling reason for release at the beginning of the pandemic, current operations have largely returned to pre-pandemic standards following the availability of vaccines. (ECF No. 922 at 9.) COVID-19 conditions do not justify release or sentence reduction at this juncture.

### 3.     Plea agreement terms

Finally, Mora argues that his sentence should be reduced because his defense counsel and the government did not honor the terms of his guilty plea. (ECF No. 916 at 14-15.) Mora contends that he told his lawyer that he would plead guilty to the firearm charge if the government released his nephew from custody, and that there was limited independent evidence linking him to the gun. (*Id.*) Here, the Court agrees with the government that a motion for sentence reduction is not the appropriate avenue for adjudicating this legal theory, which could be raised on appeal or through collateral attack to the extent not barred by the terms of the plea agreement. (ECF No. 922 at 2.) In addition, the plea agreement does not include any language with such a promise from the government. (ECF No. 601.) *See United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022) (noting that courts "generally limit [their] review to the terms of the written plea agreement and the statements made under oath during the plea colloquy" unless a defendant rebuts the presumption that the agreement is complete).

Moreover, importantly, the Court sentenced Mora to 60 months for his firearm possession charge (Case No. 55). (ECF No. 713.) At the time of this Order, Mora has been in custody for more than 60 months and is serving the remainder of his concurrent sentence for his methamphetamine charge, for which he received a 168-month sentence (Case No. 57.) (*Id.*) The Court thus finds that there is no extraordinary and compelling reason for sentence reduction stemming from Mora's guilty plea in his firearm case. Accordingly, because none of his stated justifications constitute extraordinary and compelling reasons under the meaning of Section 3582(c)(2), the Court will deny Mora's Motion.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Mora's motion for sentence reduction (Case No. 57, ECF No. 916; Case No. 55, ECF No.125) is denied as to both cases.

DATED THIS 4th Day of October 2023.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE